# Exhibit A

ENDORSED
FILED
ALAMEDA COUNTY
SEP 21 2018
CLERK OF THE SUPERIOR COURT
By Lanette Bufflin, Deputy

| | |
|---|---|
| 1 | David Borgen (SBN 099354) |
|   | dborgen@gbdhlegal.com |
| 2 | Laura L. Ho (SBN 173179) |
|   | lho@gbdhlegal.com |
| 3 | Ginger L. Grimes (SBN 307168) |
|   | ggrimes@gbdhlegal.com |
| 4 | GOLDSTEIN, BORGEN, DARDARIAN & HO |
|   | 300 Lakeside Drive, Suite 1000 |
| 5 | Oakland, CA  94612 |
|   | Tel:  (510) 763-9800 |
| 6 | Fax:  (510) 835-1417 |
| 7 | Marc L. Gelman (PA Bar No. 78,857)* |
|   | mgelman@jslex.com |
| 8 | Maureen W. Marra (PA Bar No. 309,865)* |
|   | mmarra@jslex.com |
| 9 | James E. Goodley (PA Bar No. 315,331)* |
|   | jgoodley@jslex.com |
| 10 | Ryan P. McCarthy (PA Bar No. 323,125)* |
|   | rmccarthy@jslex.com |
| 11 | JENNINGS SIGMOND, P.C. |
|   | 1835 Market Street, Suite 2800 |
| 12 | Philadelphia, PA 19103 |
|   | Tel:  (215) 922-6700 |
| 13 | Fax:  (215) 922-3524 |
| 14 | *pro hac vice applications to be filed |
| 15 | Attorneys for Plaintiff and the Putative Class |

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF ALAMEDA**

| | |
|---|---|
| TAMRYN SPRUILL, individually and on behalf of all those similarly situated, | Case No.:   18921742 |
| Plaintiff, | CLASS ACTION |
| vs. | **COMPLAINT** |
| VOX MEDIA, INC., a Delaware corporation (d.b.a. SB NATION); and DOES 1 to 10 inclusive, | DEMAND FOR JURY TRIAL |
| Defendants. | (1) Failure to Pay Minimum Wages under the Cal. Lab. Code and Wage Order 4; |
| | (2) Failure to Pay Overtime Wages under the Cal. Lab. Code and Wage Order 4; |
| | (3) Failure to Provide Meal Periods under the Cal. Lab. Code and Wage Order 4; |
| | (4) Failure to Provide Rest Periods under the Cal. Lab. Code and Wage Order 4; |
| | (5) Failure to Furnish Accurate Wage Statements under the Cal. Lab. Code and Wage Order 4; |
| | (6) Failure to Reimburse Business Expenses under the Cal. Lab. Code; and |
| | (7) California Unfair Competition Law. |

## I. INTRODUCTION

1. Plaintiff Tamryn Spruill brings this class action against Defendant Vox Media, Inc., ("Defendant" or "Vox") on behalf of herself and all other former and current paid content contributors for Vox's sports blogging network and flagship property SB Nation in California, who Vox classified as independent contractors. SB Nation operates over 300 team sites dedicated to publishing written articles, videos, and other content on professional and college sports. Each team site posts daily coverage on games, statistics, player trades, and culture. The more traffic the team sites attract, the more advertising revenue Vox generates. Vox pays Plaintiff and similarly situated class members ("Content Contributors") a small monthly stipend to create and edit the written, video, and audio content on these team sites. Content Contributors' posts are the core of Vox's business.

2. During the entire class period, Vox uniformly and consistently misclassified Content Contributors – including job titles such as Site Manager, Associate Editor, Managing Editor, Deputy Editor, and Contributor – as independent contractors in order to avoid its duties and obligations owed to employees under California law and to gain an unfair competitive advantage over its competitors that properly classify its workers as employees. Vox controls and directs the performance of Content Contributors in writing and editing content for its blogs, both under contracts it enters with some Content Contributors (but not all) and in fact. Content Contributors create the written, video, and audio content that makes up SB Nation's team site network and generates advertising revenue. Their work is central to SB Nation's business. Content Contributors do not create and edit content for their own independent businesses, but create content solely for SB Nation team sites.

3. As a result, Plaintiff alleges that all current and former Content Contributors who worked in California: (1) are entitled to unpaid minimum wages (Cal. Labor Code §§ 1182.12, 1194, 1197, 1197.1; California Industrial Welfare Commission Wage Order 4, Cal. Code Regs. tit. 8 § 11040 ("Wage Order 4") § 4; and the California Minimum Wage Order); (2) are entitled to unpaid overtime wages (Cal. Labor Code §§ 510; Wage Order 4 § 2); (3) are owed meal and rest period premiums (Cal. Labor Code § 226.7, 512; Wage Order 4 §§ 11, 12); (4) are owed statutory damages for Vox's failure to provide itemized wage statements (Cal. Labor Code §§ 226, 226.3; Wage Order 4 § 7(B)); (5) are owed reimbursement of business expenses because Vox required Content Contributors to have

1
CLASS ACTION COMPLAINT
718929.7

computers, smart phones, and internet access for work-related tasks, as well as expenses related to watching the games Content Contributors were expected to write about (Cal. Labor Code § 2802); and (6) are entitled to restitution and injunctive relief under the Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200 *et seq.*).

4. Because Defendant has willfully deprived Plaintiff and similarly situated Content Creators of the rights and protections California law guarantees to employees, Defendant's classification of Content Creators as "independent contractors" is part of ongoing unfair/unlawful business practices by Defendant.

## II.     THE PARTIES

5. Plaintiff Tamryn Spruill is an adult individual who was paid by Defendant for her work as an Associate Editor for SB Nation's team site dedicated to the Oakland, California-based Golden State Warriors called "Golden State of Mind" between August 2017 and December 2017, but Vox classified her as an independent contractor. During that time, Plaintiff resided and worked in Santa Monica, California. Currently, she resides in Rock Hill, South Carolina.

6. Defendant Vox Media, Inc. is a Delaware corporation registered to do business in California and is based in Washington, D.C. Vox operates and maintains media websites, including over 300 sports blogs under its flagship property SB Nation.

7. The true names and capacities, whether individual, corporate, associates, or otherwise of Defendants sued as DOES ONE through TEN, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names under Code of Civil Procedure section 474. Plaintiff is informed and believes that each DOE Defendant is legally responsible in some manner for the unlawful acts alleged. Plaintiff will seek leave of court to amend this Complaint to reflect the names and capacities of the Defendants designated as DOES when such identities become known.

## III.     JURISDICTION AND VENUE

8. This Court has jurisdiction over Plaintiff's and Class Members' claims under Labor Code §§ 226, 226.3, 226.7, 512, 1182.12, 1194, 1197, 1197.1, 2802, Business & Professions Code §§ 17200, *et seq.*, and Wage Order 4.

9. Venue is proper pursuant to Code of Civil Procedure section 395(a) because Defendant does not reside in the state and has not designated a principal business office in California with the California Secretary of State. As such, venue is proper in any county in California.

## IV.   FACTUAL BACKGROUND

10. Defendant is a media corporation made up of several brands including SB Nation, Polygon, Eater, Racked, Curbed, ReCode, The Verge, and Vox. SB Nation, Vox's sports blogging network, owns, operates, and maintains over 300 team sites, each dedicated to a professional sports team, professional sports region, or college known for its amateur sports. There are team sites dedicated to numerous professional and amateur sports in California, including the Golden State Warriors ("Golden State of Mind"), Oakland Athletics ("Athletics Nation"), Oakland Raiders ("Silver and Black Pride"), San Francisco Giants ("McCovey Chronicles"), San Francisco 49ers ("Niners Nation"), Los Angeles Lakers ("Silver Screen and Roll"), and the California Golden Bears ("California Golden Blogs"), among many others.

**A.   Defendant Uniformly Misclassifies Content Contributors as Independent Contractors.**

11. To generate advertisement revenue from team sites, Defendant requires a steady stream of written, video, and audio content on its team sites from Content Contributors to attract. Defendant hires a Site Manager for each team site to manage, edit, and create content, who in turn is responsible for finding other contributors to create additional blog posts. Some of these contributors are given a monthly stipend, while other contributors are unpaid. Vox posts open contributor positions on its website, but does not always indicate whether or not the position is paid.[1]

12. Defendant views its Content Contributors as independent contractors. Defendant requires some Content Contributors to sign a "Blogger Agreement," which states that Content Contributor's relationship with Defendant is as an independent contractor. Defendant does not withhold payroll taxes from its monthly payments to Content Contributors.

---

[1] *See* Careers, Vox Media, *available at*: https://www.voxmedia.com/pages/careers-jobs (last accessed September 18, 2018). The job description for "Site Manager" indicates that it is paid with a monthly stipend, while the job description for "Contributor" is silent about compensation.

13. Though Defendant classifies Content Contributors as independent contractors, Defendant exercises substantial control over the manner and means by which Content Contributors accomplish their work.

14. Content Contributors are required to create and/or edit certain numbers of posts per week. The Blogger Agreements some Content Contributors were required to sign often memorialized Defendant's expectation for the number of blog posts per week the Content Contributor was expected to create and/or edit.

15. Defendant gives Content Contributors instructions about how to conform posts to increase site traffic from online search engines, known as "search engine optimization." Content Contributors are told how to craft headlines and tag posts to attract the most viewers to each post. They are also instructed on how long certain types of posts should be (such as pre-game previews, instant recaps, and in-depth game analysis), and what key information should be included in each type of post.

16. The blog posts created by Content Contributors are core to Defendant's business. The more Content Contributors post, the more traffic to each team site, and the more revenue Defendant can generate from advertisers. Defendant pressures Content Contributors to maintain a constant flow of posted content on these team sites to attract advertisers, but Content Contributors do not see the benefits of advertising revenue. Content Contributors take no part in negotiating advertisements on team sites; all the negotiations for advertisements are handled directly by Defendant. Content Contributors have no stake in Defendant's profits or losses.

17. While Content Contributors were not always under direct supervision by Defendant, neither were they independent journalists who sold their stories to the highest bidder—Content Contributors created and edited content for the purpose of posting it on Defendant's team sites.

18. Defendant does not hire Content Contributors for their unique set of skills. Defendant does not require, for example, a college degree or prior experience in journalism. Defendant's job posting for a contributor position on a professional basketball team site lists an applicant's minimum qualifications as including that the applicant is "a huge fan of basketball," has "strong opinions on

[the] team" and takes "genuine pride in [their] writing." Applicants must also "be able to write complete sentences."

19. Defendant requires Content Contributors to have access to the internet on their personal computers and smart phones, but Content Contributors' work does not require any special tools or equipment. Defendant provides content contributors with access to internal communication and editing software.

**B. Defendant Pays Content Contributors a Small Monthly Stipend Insufficient to Meet the Legal Minimum Wage.**

20. Defendant pays Content Contributors a flat monthly stipend. Defendant does not increase the stipend as Content Contributors work more hours, such as when their team make it to the playoffs.

21. Plaintiff, for example, worked an average of twenty to twenty-five hours a week during the NBA regular season, and was paid a stipend of only $200 per month—an average of $2.00 to $2.50 per hour. Given the number of hours Content Contributors work for Defendant every month, this monthly stipend is frequently, if not always, under the minimum wage required by California law.

22. According to recent reporting from Deadspin, some Content Contributors have agreements to write a minimum of two posts per week for a $25 per month stipend, which totals about $3.13 per blog, or even less under an hourly rate.[2]

**C. Defendant Does Not Pay Content Contributors Overtime Wages.**

23. Content Contributors are sometimes assigned duties that require them to work over eight hours per day or forty hours per week.

24. Plaintiff, for example, was sometimes assigned to edit three or four stories and to write an additional story in one day. On days like these, Plaintiff worked more than eight hours in a day. Defendant did not pay Plaintiff overtime wages for those hours worked.

---

[2] *See* Laura Wagner, *SB Nation Is Paying Workers As Little As $3 Per Blog Post*, Deadspin (July 31, 2018), https://deadspin.com/sb-nation-is-paying-workers-as-little-as-3-per-blog-po-1827998745 (last accessed Sept. 28, 2018).

25.     Defendant does not pay any Content Contributor overtime wages for the time they work beyond eight hours per day or forty hours per week.

**D.    Defendant Does Not Provide Meal or Rest Periods for Content Contributors.**

26.     Content Contributors regularly work more than three and a half hours per day. Defendant does not authorize or permit Content Contributors to take ten-minute uninterrupted rest periods for every four hours or major fraction thereof worked.

27.     Content Contributors frequently work over five hours per day without a meal period. Defendant does not provide a 30-minute off-duty meal period for Content Contributors within the first five hours of work per day, nor does it provide a second meal break for Content Contributors who work more than ten hours in a day.

28.     Defendant has never paid Content Contributors with meal and rest break premiums for its failure to provide meal and rest breaks.

**E.    Defendant Does Not Provide Content Contributors with Accurate Itemized Wage Statements.**

29.     Defendant fails to provide Content Contributors with any wage statements, let alone wage statements that show the actual hours worked, all overtime wages, gross and net wages earned, all applicable hourly rates and corresponding number of hours worked at each rate, deductions, the inclusive dates of the period for which the employee is paid, the name of the employee or the employee's social security number, and the name of the employer.

**F.    Defendant Does Not Reimburse Content Contributors for Reasonable Business Expenses.**

30.     Defendant requires Content Contributors to use their own computers, smart phones, and internet access to create and edit content, as well as to communicate with editors, Site Managers, or SB Nation supervising employees. Defendant does not reimburse Content Contributors for their personal computers, smart phones, or internet access expenses.

31.     Content Contributors are required to watch sports live or on television so that they may write or create video content about games or matches. Defendant does not reimburse Content Contributors for the costs of attending, watching, or traveling to these sporting events.

## V. CLASS ACTION ALLEGATIONS

32. Plaintiff seeks to proceed as a class action pursuant to California Code of Civil Procedure § 382 on behalf of the following class of persons:

> All Content Contributors who created and/or edited written, video, or audio content for an SB Nation team site in California at any time within the four years prior to the filing of the Complaint in this action, were classified as independent contractors, and were paid compensation directly from Vox, excluding Site Managers who opt-in to *Bradley v. Vox Media, Inc.*, No. 1:17-cv-01791 (D.D.C.).

33. The putative class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number would be based are within the sole custody and/or control of Defendant, upon information and belief, Defendant has employed over forty Content Contributors in California within the last four years.

34. Among the proposed class, there is a well-defined community of interest in the questions of law and/or fact involved. Those common questions include, but are not limited to:

    a. Whether Defendant misclassified Class Members as independent contractors;

    b. Whether the same test for misclassification applies to both claims derived from the applicable wage order and statutory claims not derived from the applicable wage order;

    c. Whether Defendant was required to issue Class Members wage statements with certain required information;

    d. Whether Defendant is required to reimburse Class Members for a portion of their home internet, personal computer, and personal smart phone expenses; and

    e. Whether Defendant's Labor Code and Wage Order violations serve as predicate violations of the UCL.

35. Common questions of law and/or fact predominate over questions that affect only individual Class Members. Plaintiff's claims are typical of those belonging to members of the Class, and Plaintiff can adequately represent the Class.

**FIRST CAUSE OF ACTION**
**Minimum Wage Violation**
**[Cal. Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1,**
**Wage Order 4; Minimum Wage Order]**

36. Plaintiff, on behalf of herself and all Class Members, re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth here.

37. California Labor Code §§ 1194, 1197, 1197.1 and Wage Order 4 entitle employees to an amount equal to or greater than the minimum wage for all hours worked.

38. Defendant paid Plaintiff and Class Members a fixed monthly stipend independent of the number of hours they worked each month. Given the number of hours Plaintiff and Class Members worked each month, Defendant's monthly stipend was insufficient to meet the legal minimum wage.

39. As a result of Defendant's failure to Plaintiff and Class Members the legal minimum wage, Plaintiff and Class Members are entitled to recover the unpaid balance of the full amount of the minimum wage for all hours worked, plus interest, liquidated damages, and attorney's fees and costs, as well as further relief as described below.

**SECOND CAUSE OF ACTION**
**Failure to Pay Overtime Wages**
**[Cal. Labor Code §§ 510; Wage Order 4]**

40. Plaintiff, on behalf of herself and all Class Members, re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth here.

41. California Labor Code § 510 and Wage Order 4 entitle employees to overtime premiums for hours worked in excess of eight (8) in a given day, forty (40) in a given workweek, or on the seventh day worked in a single workweek. All hours must be paid at the statutory or agreed rate and no part of this rate may be used as a credit against a minimum wage obligation.

42. While misclassified as independent contractors, Plaintiff and Class Members worked in excess of eight hours per day and in excess of forty hours per week, and Defendant unlawfully failed to pay Plaintiff and Class Members the proper overtime compensation.

43. As a result of these violations, Defendant is liable for unpaid overtime wages, interest, and attorneys' fees and costs, as well as further relief as described below.

**THIRD CAUSE OF ACTION**
**Failure to Provide Meal Periods**
**[Cal. Labor Code §§ 226.7, 512, and 1194; Wage Order 4]**

44. Plaintiff, on behalf of herself and all Class Members, re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth here.

45. California Labor Code § 512(a) states in pertinent part, "[A]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes."

46. Wage Order 4 states, in relevant part, "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes." If no meal period is provided, the Wage Orders require the employer to "pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided."

47. California Labor Code § 226.7 states, in relevant part, "An employer shall not require an employee to work during a meal … period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission." Section 226.7 requires an employer to pay one additional hour of pay at the employee's regular rate if the meal or rest period is not provided.

48. Defendant has had no policy or practice of providing meal periods to Plaintiff or Class Members, and Defendant failed to provide meal periods to Plaintiff and Class Members or an hour of premium pay for each missed meal period as required by California Labor Code §§ 226.7 and 512, and Wage Order 4.

49. As a result of Defendant's willful and unlawful failure to provide meal periods to Plaintiff and Class Members and Defendant's failure to pay an hour of premium pay for each missed meal period, Plaintiff and Class Members are entitled to recover one hour of pay at their regular rate of compensation for each workday that a meal period was not provided, plus interest, attorney's fees and costs, as well as further relief as described below.

## FOURTH CAUSE OF ACTION
**Failure to Provide Rest Periods**
**[Cal. Labor Code §§ 226.7 and 1194; Wage Order 4]**

50. Plaintiff, on behalf of herself and all Class Members, re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth here.

51. California Labor Code § 226.7 states, in relevant part: "An employer shall not require an employee to work during a … rest … period," and if "an employer fails to provide an employee a rest period … the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."

52. Wage Order 4 states, in pertinent part, "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. The Wage Orders require an employer to "pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided."

53. Defendant has had no policy or practice of providing rest periods to Class Members, and Defendant failed to provide rest periods to all Class Members or an hour of premium pay at the regular rate for each day a rest period was not provided.

54. As a result of Defendant's willful and unlawful failure to provide rest periods to all Class Members and Defendant's failure to pay an hour of premium pay at the regular rate for each day a rest period was not provided, Plaintiff and Class Members are entitled to recover one hour of pay at their regular rate of compensation for each workday that a rest period was not provided, plus interest, attorney's fees, and costs, as well as further relief as described below

## FIFTH CAUSE OF ACTION
### Failure to Provide Accurate Itemized Wage Statements
### [Cal. Labor Code §§ 226 and 226.3; Wage Order 4]

55. Plaintiff, on behalf of herself and all Class Members, re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth here.

56. California Labor Code § 226 provides, in relevant part, that every employer must furnish each employee with an itemized wage statement at the time of each payment of wages showing the total numbers of hours worked each pay period, gross wages, net wages, all deductions, all applicable hourly rates of pay, the dates of the period for which the employee is paid, the name of the employee and the last four digits of their social security number or employee identification number, and the name and address of the legal entity that is the employer.

57. Wage Order 4 requires employers to provide, at the time of each payment of wages, "an itemized statement in writing showing: (1) all deductions; (2) the inclusive dates of the period for which the employee is paid; (3) the name of the employee or the employee's social security number; and (4) the name of the employer."

58. Defendant willfully failed to furnish Plaintiff and Class Members, upon each payment of compensation, itemized wage statements.

59. During all relevant times, Class Members were injured by these failures because, among other things, they were confused about whether they were paid properly and/or they were misinformed about how many total hours they worked in each pay period.

60. California Labor Code § 226(e)(1) provides that an employee suffering injury as a result of a knowing and intentional failure by an employer to provide accurate itemized wage statements is entitled to recover the greater of all actual damages suffered or fifty dollars ($50) for the initial violation and one hundred dollars ($100) for each subsequent violation, up to four thousand dollars ($4,000). Pursuant to California Labor Code § 226(h), Plaintiff and Class Members are entitled to injunctive relief to ensure Defendant's compliance with California Labor Code § 226.

61. Plaintiff and Class Members are entitled to an award of costs and reasonable attorneys' fees under California Labor Code § 226(h), as well as further relief as described below.

11
CLASS ACTION COMPLAINT

### SIXTH CAUSE OF ACTION
**Failure to Reimburse Business Expenses**
**[Cal. Labor Code § 2802]**

62. Plaintiff, on behalf of herself and all Class Members, re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth here.

63. California Labor Code § 2802 requires employers to indemnify an employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of the employee's duties.

64. During all relevant times, Defendant failed to indemnify Plaintiff and Class Members for their expenses related to using their personal computers, using their personal smart phones, and maintaining access to the internet. Defendant also failed to reimburse Plaintiff and Class Members for the costs associated with viewing the games they were expected to write about. Plaintiff and Class Members are entitled to indemnification of their expenses related to their home internet payments plus prejudgment interest pursuant to California Labor Code § 2802.

65. Plaintiff, on behalf of herself and similarly situated Class Members, request further relief as described below.

### SEVENTH CAUSE OF ACTION
**Unfair Competition Law Violations**
**[Cal. Bus. & Prof. Code §§ 17200 *et seq.*]**

66. Plaintiff, on behalf of herself and all Class Members, re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth here.

67. California Business & Professions Code §§ 17200 *et seq.* prohibits unfair competition in the form of any unlawful, unfair, deceptive, or fraudulent business practices.

68. Plaintiff brings this cause of action individually and representative of all others subject to Defendant's unlawful acts and practices.

69. In the four years prior to the filing of this Complaint, Defendant has committed unlawful, unfair, deceptive, and/or fraudulent acts as defined by California Business & Professions Code § 17200. Defendant's unlawful, unfair, deceptive, and/or fraudulent business practices include, without limitation, failing to pay the minimum wage, failing to pay overtime wages, failing to provide

mandated meal and rest periods, failing to furnish accurate itemized wage statements, and failing to indemnify Content Contributors for business expenses in violation of California law.

70. As a result of these unlawful, unfair, and/or fraudulent business practices, Defendant reaped unfair benefits and illegal profits at the expense of Plaintiff and Class Members.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court to grant the following relief against Defendant as follows:

A. Certify this action as a class action pursuant to California Code of Civil Procedure § 382 for Class Members, and appoint Plaintiff as Class Representative and her attorneys as Class Counsel;

B. Direct class notice to all Class Members;

C. Declare that Defendant misclassified all Class Members as independent contractors;

D. Award minimum wages and liquidated damages to Plaintiff and Class Members;

E. Award overtime wages to Plaintiff and Class Members;

F. Award compensation for Defendant's failure to provide meal periods and rest periods;

G. Award damages for Defendant's failure to provide accurate itemized wage statements;

H. Award damages for Defendant's failure to reimburse necessary business expenses;

I. Award pre-judgment and post-judgment interest;

J. Order Defendant to make restitution to Plaintiff and other Class Members due to its unlawful and/or unfair business practices, including interest;

K. Enjoin Defendant from violating California law;

L. Award costs and expenses of this action;

M. Award reasonable attorneys' fees; and

N. Award such other relief as this Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on claims so triable.

Dated:  September 21, 2018

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

_____
Laura L. Ho

Attorneys for Plaintiff and the Putative Class