David Borgen (SBN 009354)
dborgen@gbdhlegal.com
Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Ginger L. Grimes (SBN 307168)
ggrimes@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
Tel: (510) 763-9800
Fax: (510) 835-1417

Marc L. Gelman*
mgelman@jslex.com
Maureen W. Marra*
mmarra@jslex.com
James E. Goodley*
jgoodley@jslex.com
Ryan P. McCarthy*
rmccarthy@jslex.com
JENNINGS SIGMOND, P.C.
1835 Market Street, Suite 2800
Philadelphia, PA 19103
Tel: (215) 922-6700
Fax: (215) 922-3524

*pro hac vice applications to be filed

Attorneys for Plaintiff and the Putative Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMRYN SPRUILL, individually, and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>VOX MEDIA, INC., a Delaware corporation (d.b.a. SB NATION); and DOES 1 to 10 inclusive,<br><br>Defendants. | Case No. 18-cv-06807-PJH<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: January 9, 2019<br>Time: 9:00 a.m.<br>Dept: Courtroom 3, 3rd Floor<br>Before: Hon. Phyllis J. Hamilton<br><br>Trial Date: None Set |

## NOTICE OF MOTION AND MOTION

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 9, 2019, at 9:00 a.m., or on such date as the Court may consider the matter with or without a hearing, in the Courtroom of the Honorable Phyllis J. Hamilton, Courtroom 3, located at 1301 Clay Street, Oakland, CA 94612, Plaintiff Tamryn Spruill will and hereby does move for an order remanding the above-titled action to the Superior Court for the County of Alameda pursuant to 28 U.S.C. § 1447 on the basis that Defendant Vox Media, Inc. has failed to establish by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declaration of Ginger L. Grimes, the Request for Judicial Notice, and the [Proposed] Order submitted herewith, as well as the pleadings on file in this case and such other evidence or argument as the Court may consider.

Dated: December 5, 2018

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

*/s/ Ginger L. Grimes*
Ginger L. Grimes

Attorneys for Plaintiff and the Putative Class

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. FACTS ...................................................................................................................................1

    A. Allegations Related to Plaintiff's Minimum Wage Claim. ......................................2

    B. Allegations Related to Plaintiff's Meal and Rest Break Claims. .............................3

    C. Allegations Related to Plaintiff's Wage Statement Claim. .....................................3

    D. Defendant's Notice of Removal. ..............................................................................3

III. ANALYSIS ............................................................................................................................4

    A. Vox Bears the Burden of Establishing Federal Jurisdiction Under CAFA. ............4

    B. Vox Has Not Met Its Burden of Establishing That More Than $5 Million Is In Controversy. .............................................................................................................5

        1. The Naylor Declaration is Not Competent Evidence Supporting Removal. .......................................................................................................5

        2. Vox Fails to Establish Its Minimum Wage Calculations by a Preponderance of Evidence. .................................................................................................8

            a. Vox Unreasonably Assumes All Content Contributors Work the Same Number of Hours Per Week, Every Week of the Year. ...............8

            b. Vox Unreasonably Uses an Average Minimum Wage Over Four Years Rather Than the Applicable Minimum Wage. ............................9

            c. Vox Unreasonably Uses Plaintiff's Monthly Stipend to Offset All Class Members' Minimum Wage Damages. ........................................10

        3. Vox Fails to Establish Its Meal and Rest Break Calculations by a Preponderance of Evidence. ...............................................................................10

            a. Vox Speculates About the Number of Hours Content Contributors Work Per Week for Every Week of the Year. .................10

            b. Vox Uses The Same Unreasonable Hourly Rate to Estimate Meal and Rest Break Premiums Over the Four-Year Period. .......................11

            c. Vox Speculates That The Class Suffered a Once-Per-Week Violation Rate. ............................................................................................11

        4. Vox Fails to Establish Its Wage Statement Calculation by a Preponderance of Evidence. .......................................................................13

        5. Vox Relies on Speculation and Conjecture to Estimate Attorneys' Fees. ........14

IV. CONCLUSION ...................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abrego Abrego v. The Dow Chemical Co.*,
 443 F.3d 676 (9th Cir. 2006) ..........................................................................................................5

*Anderson v. Schwan*,
 No. C 13-2362-PJH, 2013 WL 3989562 (N.D. Cal. Aug. 2, 2013) ............................................9, 10

*Basile v. Aaron Brothers, Inc.*,
 No. 3:17-cv-485-L(NLS), 2018 WL 655360 (S.D. Cal. Feb. 1, 2018) ......................................12, 14

*Blevins v. Republic Refrigeration, Inc.*,
 No. CV 15-04019-MMM(MRWx), 2015 WL 12516693 (C.D. Cal. Sept. 25, 2015) ......................13

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
 135 S. Ct. 547 (2014) ....................................................................................................................4

*Ford v. CEC Entm't, Inc.*,
 No. CV 14-01420 RS, 2014 WL 3377990 (N.D. Cal. July 10, 2014) ............................................12

*Garcia v. Wal-Mart Stores Inc.*,
 207 F. Supp. 3d 1114 (C.D. Cal. 2016) ..........................................................................................4

*Hughes v. McDonald's Corp.*,
 No. C 14-1700-PJH, 2014 WL 3797488 (N.D. Cal. July 31, 2014) ...............................................13

*Ibarra v. Manheim Invs., Inc.*,
 775 F.3d 1193 (9th Cir. 2015) ...............................................................................................1, 4, 5

*LaCross v. Knight Transp. Inc.*,
 775 F.3d 1200 (9th Cir. 2015) .......................................................................................................4

*Mackall v. Healthsource Glob. Staffing, Inc.*,
 No. 16-cv-03810-WHO, 2016 WL 4579099 (N.D. Cal. Sept. 2, 2016) ..........................................12

*Perez v. Saks & Co.*,
 No. C 14-2512-PJH, 2014 WL 4060306 (N.D. Cal. Aug. 14, 2014) .........................................13, 14

*Reginald Lockhart v. Columbia Sportswear Co.*,
 No. 5:15-cv-01534-ODW-PLA, 2015 WL 5568610 (C.D. Cal. Sept. 22, 2015) ..........................5, 9

*Roth v. Comerica Bank*,
 799 F. Supp. 2d 1107 (C.D. Cal. 2010) ..............................................................................6, 7, 12

*Sanders v. Old Dominion Freight Line, Inc.*,
 No. 16-CV-2837-CAB-NLS, 2017 WL 5973566 (S.D. Cal. Feb. 2, 2017) ....................................13

*Smith v. Diamond Resorts Mgmt., Inc.*,
   No. EDCV 15-2477-VAP, 2016 WL 356020 (C.D. Cal. Jan. 29, 2016) ...............................6, 12, 14

*Taylor v. United Road Servs., Inc.*,
   313 F. Supp. 3d 1161 (E.D. Cal. 2018) ........................................................................................7

*Tejero v. NRG Energy Servs. LLC*,
   No. 18-cv-04188-PJH, 2018 WL 6009705 (N.D. Cal. Nov. 16, 2018).........................................5, 11

**Federal Statutes**

Class Action Fairness Act, 28 U.S.C. § 1332(d) ..................................................................................1, 4

**State Statutes**

Cal. Labor Code
   § 1182.12 ......................................................................................................................................9
   § 1197 ...........................................................................................................................................9

California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ....................................2

## I. INTRODUCTION

Defendant Vox Media, Inc. ("Vox" or "Defendant") filed a Notice of Removal on November 9, 2018 that failed to establish the required $5 million amount in controversy necessary to invoke federal jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Vox "cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

Vox's showing does not establish that, more likely than not, the amount in controversy exceeds the jurisdictional threshold. The one short declaration from Vox's Accounting Operations Manager provides only speculative estimates of the number of putative Class Members and the number of days for which Class Members were paid. It lacks numerous pieces of vital information, including how much Class Members were paid in stipends, reasonable estimates about the number of hours Class Members worked, and the frequency at which Class Members suffered meal and rest break violations. The Notice of Removal then exacerbates these fundamental flaws by making serious mathematical errors and relying on unreasonable assumptions to stand in for their lack of evidence.

Because Vox fails to meet its burden of establishing federal jurisdiction, this action must be remanded to the Alameda Superior Court.

## II. FACTS

Plaintiff filed her complaint on September 21, 2018 in the Superior Court for the State of California in Alameda County. *See* Declaration of Katherine V.A. Smith in Support of Defendant's Notice of Removal, ECF No.1-1, Ex. A ("Complaint" or "Compl."). Plaintiff alleged that Defendant misclassifies Plaintiff and other Content Contributors as independent contractors, and because of such misclassification, fails to provide Content Contributors with all of the benefits and protections of California law.

Plaintiff seeks to represent a class of:

> All Content Contributors who created and/or edited written, video, or audio content for an SB Nation team site in California at any time within the four years prior to the filing of the Complaint in this action, were classified as independent contractors, and were paid compensation

directly from Vox, excluding Site Managers who opt-in to *Bradley v. Vox Media, Inc.*, No. 1:17-cv-01791 (D.D.C.).

Compl. ¶ 32.

Plaintiff alleged six causes of action under California law related to Defendant's failure to: (1) pay minimum wages; (2) pay overtime wages; (3) provide meal periods; (4) provide rest periods; (5) furnish accurate wage statements; and (6) reimburse business expenses. In addition, Plaintiff alleged that Defendant violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

### A.     **Allegations Related to Plaintiff's Minimum Wage Claim.**

Plaintiff worked at Vox between August 2017 and December 2017 as an Associate Editor for Golden State of Mind. Compl. ¶ 5. During those months, Plaintiff was paid a monthly stipend of $200 per month. Compl. ¶ 21. During the NBA regular season, which in 2017 began on October 17, 2017,[1] Plaintiff worked approximately 20-25 hours per week. Compl. ¶ 21.

Vox pays all Content Contributors a flat monthly stipend. Compl. ¶ 20. But nowhere in the Complaint does Plaintiff allege that all Content Contributors, or even most Content Contributors, are paid the same $200 per month stipend Plaintiff received. In fact, the Complaint identifies a news article reporting that some site contributors, expected to write two blog posts per week, were paid stipends of $25 per month. *See* Compl. ¶ 22.

Furthermore, Plaintiff's Complaint does not allege that all Content Contributors worked hours similar to the hours Plaintiff worked. Plaintiff worked twenty to twenty-five hours during the NBA's regular season, but the Complaint is silent as to the number of hours she worked in the off-season. *See* Compl. ¶ 21. Content Contributors' duties spike around game days, when Vox expects each site to post pre-game, quick recaps, and in-depth post-game coverage. *See* Grimes Decl. Ex. 2 ("For every game we have a preview, a live GameThread and post-game coverage that includes a quick recap (posted within a half hour of game's end) and a full recap (in-depth analysis to be posted the next morning).").

---

[1] The NBA regular season in 2017-18 began on October 17, 2017 and ended on April 11, 2018. *See* Grimes Decl. Ex. 1 (NBA Key Dates for 2017-18).

B.   **Allegations Related to Plaintiff's Meal and Rest Break Claims.**

Plaintiff alleges that Content Contributors "regularly work more than three and a half hours per day," and that Vox does not authorize or permit Content Contributors to take ten-minute uninterrupted rest periods for every four hours or major fraction thereof worked. Compl. ¶ 26. Plaintiff alleges that "Defendant has had no policy or practice of providing rest periods to Class Members." Compl. ¶ 53.

Plaintiff also alleges that Content Contributors "frequently work over five hours per day," and that Vox does not provide a 30-minute off-duty meal period within the first five hours of work, nor a second meal break for those who work more than ten hours in a day. Compl. ¶ 27. Plaintiff alleges that "Defendant has had no policy or practice of providing meal periods to Plaintiff or Class Members." Compl. ¶ 48.

The Complaint does not state the number of meal and rest break violations Plaintiff suffered, nor does it state the number of days for which Plaintiff worked enough hours to trigger Vox's meal and rest break obligations. While the Complaint alleges that Plaintiff worked 20-25 hours during the NBA regular season, it is silent as to how Plaintiff split those hours across the days of the week. *See* Compl. ¶ 21.

C.   **Allegations Related to Plaintiff's Wage Statement Claim.**

Plaintiff alleges that Vox "fails to provide Content Contributors with any wage statements, let alone wage statements that show the actual hours worked, all overtime wages, gross and net wages earned, all applicable hourly rates and corresponding numbers of hours worked at each rate, deductions, the inclusive dates of the period for which the employee is paid, the name of the employee or the employee's social security number, and the name of the employer." Compl. ¶ 29. Plaintiff also alleges that "Defendant willfully failed to furnish Plaintiff and Class Members, upon each payment of compensation, itemized wage statements." Compl. ¶ 58.

D.   **Defendant's Notice of Removal.**

Vox filed its notice of removal on November 9, 2018. ECF No. 1. In its notice of removal, Vox estimates the amount in controversy based four of Plaintiff's claims: failure to pay minimum wages, failure to provide meal periods, failure to provide rest periods, and failure to provide accurate wage statements. *Id*. ¶¶ 26-43. Vox also estimates attorneys' fees by adding 25% of its estimated

amount in controversy to the total. *Id.* ¶¶ 44-46.

In support of its notice of removal, Vox submitted the Declaration of James Naylor ("Naylor Decl."). ECF No. 1-7. Naylor has been employed as Vox's Manager of Accounting Operations since 2017. *Id.* at ¶ 1. Naylor reviewed the stipend information for Content Contributors between September 21, 2014 and September 21, 2018, and using that information as well as Vox's data on the current addresses of Content Contributors, estimated the number of individuals in the Class. *Id.* at ¶¶ 5, 7. Naylor also asserts that based on the history of monthly stipends paid to putative Class Members, he was able to estimate the number of days Class Members worked in the last four years. *Id.* at ¶ 7. Naylor provides the same information for the one-year period prior to the filing of the complaint. *Id.* at ¶¶ 8-9.

### III. ANALYSIS

### A. Vox Bears the Burden of Establishing Federal Jurisdiction Under CAFA.

CAFA provides federal jurisdiction over class actions in which: (1) there are at least one hundred putative class members; (2) at least one plaintiff is diverse in citizenship from any defendant; and (3) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551 (2014).

If, after removal, the plaintiff contests the defendant's allegation regarding the amount in controversy, the court decides by a preponderance of the evidence whether the amount in controversy is met. *Dart*, 135 S. Ct. at 553-54. Both parties are given an opportunity to submit "affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy.'" *Ibara*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Insu. Co.*, 116 F. 3d 373, 377 (9th Circ. 1997)). A plaintiff may rebut defendant's evidence but is not required to do so to prevail on a motion to remand. *See Garcia v. Wal-Mart Stores Inc.*, 207 F. Supp. 3d 1114, 1120 (C.D. Cal. 2016).

In determining the amount in controversy, courts look first to the complaint. *Id.* at 1197. If damages are unstated in the complaint, the defendant seeking removal bears the burden of establishing the amount in controversy by a preponderance of the evidence. *Id.* If the defendant "relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable ones." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200,

4

725384.8

1202 (9th Cir. 2015) (citing *Ibarra*, 775 F.3d at 1199). A defendant "cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197.

A court must remand the case if the pleadings and evidence do not establish the threshold jurisdictional amount by a preponderance of the evidence. *See Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 689-90 (9th Cir. 2006).

As the party seeking federal jurisdiction, Vox has the burden of proving CAFA's requirements and must use reasonable assumptions to support its estimation of the amount in controversy.

**B.  Vox Has Not Met Its Burden of Establishing That More Than $5 Million Is In Controversy.**

Vox has failed to show in its notice of removal that there is more than $5 million at stake in this case. Vox makes a number of unsupported and unreasonable assumptions about the number of putative Class Members and the frequency and duration of Labor Code violations. *See Reginald Lockhart v. Columbia Sportswear Co.*, No. 5:15-cv-01534-ODW-PLA, 2015 WL 5568610, at *2 (C.D. Cal. Sept. 22, 2015) (citation omitted) ("When discussing the amount in controversy, a removing party cannot speculate, but must provide the underlying facts supporting its calculations."). Neither the Complaint nor Vox's evidence establish the threshold jurisdictional amount by a preponderance of evidence; therefore, this case must be remanded to Alameda County Superior Court. *See Tejero v. NRG Energy Servs. LLC*, No. 18-cv-04188-PJH, 2018 WL 6009705, at *2-3 (N.D. Cal. Nov. 16, 2018).

**1.  The Naylor Declaration is Not Competent Evidence Supporting Removal.**

Vox relies on the Naylor Declaration to estimate the number of individuals who were paid as Content Contributors for the last four years and the number of days for which they were paid. The Naylor Declaration lacks several important details: (1) why Naylor estimated the Class size based solely on Content Contributors' current addresses rather than addresses at the time they worked as Content Contributors; (2) how Naylor calculated the number of days Content Contributors worked based on monthly stipend history; (3) why Naylor excluded information about stipends paid to Content Contributors; and (4) why Naylor excluded information about the number of Content Contributors by

job title. As a representative of Vox, Naylor is responsible for including this type of information to support removal. *See Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1130 (C.D. Cal. 2010) (finding that defendants were in "the best position to adduce evidence regarding the . . . wages of their [employees]" but failed to offer evidence of such wages in support of their calculation of the amount in controversy); *Smith v. Diamond Resorts Mgmt., Inc.*, No. EDCV 15-2477-VAP (SPx), 2016 WL 356020, at *3 (C.D. Cal. Jan. 29, 2016) (rejecting defendant's assumptions where the defendant had access to employment and payroll records that would have allowed it to provide more accurate figures).

First, Naylor estimates that there are 253 members of the putative Class in the four-year period prior to the date Plaintiff filed her Complaint based on the number of Content Contributors who *currently reside in California.* Naylor Decl. ¶¶ 5-6. Instead of looking at the address on the stipend checks or at the address listed on Content Contributor Blogger Agreements to estimate the number of putative Class Members, Vox looks only at Content Contributor's current residences. Vox acknowledges that this estimation is both over-inclusive and under-inclusive because some Content Contributors who worked in California during the Class Period have moved out of state (like Plaintiff), while some Content Contributors who worked outside of California now reside in the state. *See* Notice of Removal, ECF No. 1, n.1. Vox could have revised its estimate by looking at its own data, but instead relied on Naylor's faulty estimate to calculate the damages for Plaintiff's claims.

Second, Naylor estimates that the 253 individuals identified in the four-year period were paid a total of 134,047 days and the 177 individuals identified in the one-year period were paid for a total of 38,315 days. Naylor Decl. ¶¶ 6-9. Naylor provides no basis for how he estimated the number of days Content Contributors were "paid over." Plaintiff's Complaint alleges that Content Contributors are paid monthly, regardless of the number of hours or days worked, and that Vox does not keep records of actual hours worked. *See* Compl. ¶¶ 20, 29. Plaintiff does not allege that Content Contributors were required to work on certain days or keep a particular working schedule, and individuals who are treated as independent contractors are typically not required to record their hours or days worked. Naylor's conclusion that Content Contributors were paid over a certain number of days requires an explanation about how he made this estimate so that Plaintiff can assess whether those days are reasonably

comparable to the number of days Content Contributors worked. If Naylor's conclusion is based on the number of days in each of the months for which it paid Content Contributors a stipend, the declaration should say so. If Vox does in fact keep records about the number of days each individual Content Contributor works, Vox must support its estimated amount in controversy with such information. *See Roth*, 799 F. Supp. 2d at 1130. Otherwise, these assumptions on which all of Vox's calculations are based are unsupported and unreasonable. *See Taylor v. United Road Servs., Inc.*, 313 F. Supp. 3d 1161, 1176-77 (E.D. Cal. 2018) (defendant's evidence explaining how it calculated the total number of work weeks was based on unreasonable assumptions).

Third, Naylor fails to identify the proportion of the Class that received varying amounts in monthly stipends. Naylor has access to this pay history—he reviewed it in preparation for his declaration. Naylor Decl. ¶ 5. As discussed below, the amount each Content Contributor was paid in stipend is essential to the calculation of Plaintiff's minimum wage claim to determine the offset to the amount owed to the Class. Naylor's failure to include this information causes Vox to unreasonably assume all Contributors are paid a $200 monthly stipend.

Fourth, Naylor fails to segregate Content Contributors by job title, which would provide support for a reasonable estimate of hours worked. Plaintiff identifies five job titles in her Complaint: Site Manager, Associate Editor, Managing Editor, Deputy Editor, and Contributor. Compl. ¶ 2. Plaintiff was an Associate Editor. Compl. ¶ 5. In addition to writing duties, Plaintiff was expected to edit stories—sometimes Plaintiff edited three or four stories and was assigned an additional story in one day. Compl. ¶ 24. Other Content Contributors who did not have editing duties were assigned, for example, two posts per week, and paid a smaller stipend than Plaintiff. Compl. ¶ 22. Site Managers, on the other hand, were expected to write blog posts, recruit other writers, edit and schedule posts, and manage the site's social media accounts. *See* Grimes Decl. Ex. 9 ("SB Nation blog openings"). The time commitment for a site manager is greater than that of a site contributor. *Id.* It would be reasonable to assume that the hours worked and stipend amounts would be relatively proportional to the duties Vox required each job title to complete. Naylor fails to include this information in his declaration. Without a basis to estimate hours worked, Vox's estimate is purely speculative.

Naylor's declaration uses unreasonable assumptions to estimate the class size and the work periods for the putative Class. These assumptions alone are enough to conclude that Vox failed to meet its burden of proving federal jurisdiction in its removal notice. However, Naylor fails to include other vital information, and because of this faulty evidence, Vox makes numerous other errors and substitutes unreasonable assumptions in support of its amount in controversy calculation, as detailed below.

### 2. Vox Fails to Establish Its Minimum Wage Calculations by a Preponderance of Evidence.

In estimating the amount of minimum wage damages owed to the Class, Vox makes a number of unsupported speculations, unreasonable assumptions, and miscalculations. First, Vox assumes that all Content Contributors work 20-25 hours per week for every week of the year, when there are significant variations in weekly hours due to the nature of Content Contributors' work and job responsibilities. Second, Vox unreasonably uses an average minimum wage rather than the applicable minimum wage over the four-year period. Third, Vox assumes that all Class Members' damages are offset by an across-the-board $200 per month stipend, even though Vox could have used Content Contributors' pay histories for a more accurate estimate.

#### a. Vox Unreasonably Assumes All Content Contributors Work the Same Number of Hours Per Week, Every Week of the Year.

Given the nature of Vox's business, Content Contributors work more hours around game days and work fewer hours in the off-season. A professional basketball team like the Golden State Warriors plays about three games per week. *See* Grimes Decl. Ex. 3, (Golden State Warriors 2018-19 Season Schedule). The Warriors often play in the NBA playoffs and continue to play in games two months after the regular season ends. *See* Grimes Decl. Ex. 1 (Key dates for 2017-18 NBA Season). But not all NBA teams make the playoffs, and not all sports have matches as frequent as the NBA. Professional baseball teams play approximately 6 games per week, while professional football teams play only one game per week. *See* Grimes Decl. Exs. 4 (game schedule for the Oakland Athletics from June 2018); 5 (NFL weekly schedule for 2018-19). The regular season for Major League Baseball lasts approximately 26 weeks, but the WNBA's regular season lasts only thirteen weeks and the NFL's

regular season lasts about seventeen weeks. *See* Grimes Decl. Exs. 6 (MLB important dates and events); 7 (WNBA Key Dates); 8 ("Creating the NFL Schedule") at p. 1. A reasonable estimate of the number of hours Content Contributors worked in the last four years for different team sites would take these factors into account.

Vox also fails to take into account variations in hours by job title and responsibility. SB Nation acknowledges on its website dedicated to blog openings that site managers have a "larger time commitment than site contributors." *See* Grimes Decl. Ex. 9. Plaintiff's experience confirms that as an Associate Editor, she had more job responsibilities than other site contributors. *See* Grimes Decl. Ex. 10 (Declaration of Tamryn Spruill ("Spruill Decl.")) at ¶¶ 6-9. Yet Vox unreasonably bases its estimate of minimum wage damages by using only the hours worked for one Content Contributor under one job title.

Vox fails to account for these variations when estimating the Class' minimum wage damages. Instead, Vox unreasonably extrapolates the number of hours based on one job title and one team site for all Content Contributors and all of California's team sites. *See Anderson v. Schwan*, No. C 13-2362-PJH, 2013 WL 3989562, at *4-5 (N.D. Cal. Aug. 2, 2013) (rejecting defendant's assumption that all class members worked the same number of overtime hours as the plaintiff). For this reason alone, Vox fails to meet it burden to prove the amount in controversy on Plaintiff's minimum wage claim.

### b. <u>Vox Unreasonably Uses an Average Minimum Wage Over Four Years Rather Than the Applicable Minimum Wage.</u>

Vox's minimum wage claim estimate is also inaccurate because it improperly assumes that Class Members were entitled to the same minimum wage rate over the entire four-year period. Vox estimates that the applicable minimum wage between September 21, 2014 and September 21, 2018 was $10 per hour. ECF No. 1, ¶ 27, n.2. However, since September 21, 2014, California has required that employers pay four different minimum wages, and local jurisdictions may require even higher minimum wages. *See* Cal. Labor Code §§ 1182.12; 1197. While Vox has access to the dates each Class Member was paid a stipend and their addresses and could use those dates and addresses to find the applicable minimum wage, Vox instead picks a number close to the average minimum wage over the four-year period. This minimum wage averaging leads to an unreasonable and speculative

9

PL.'S NOT. OF MOT. & MOT. TO REMAND; MEM. OF P. & A. IN SUPPORT THEREOF - CASE NO. 18-CV-06807-PJH

725384.8

estimate. *See Reginald Lockhart*, 2015 WL 5568610 at *4 (rejecting defendant's estimated minimum wage damages where the defendant used an average hourly wage per employee for a four-year period and failed to break the average by year).

### c. Vox Unreasonably Uses Plaintiff's Monthly Stipend to Offset All Class Members' Minimum Wage Damages.

Vox also unreasonably uses Plaintiff's $200 monthly stipend to estimate the offset against the minimum wages the Class was owed. Content Contributors received varying amounts for their stipends. Some Content Contributors who had a two-blog-per-week agreement may have received $25 per month. *See* Compl. ¶ 22. Others may have received more money or less money than Plaintiff. *See* Grimes Decl. Ex. 10 (Spruill Decl.) at ¶¶ 2, 4-5. If other Content Contributors received a larger stipend but worked a similar number of hours, they would be entitled to a smaller amount in individual damages for the minimum wage claim. Vox provided no information about the amount Content Contributors received in stipends, even though it reviewed this information for the purposes of its removal notice. *See* Naylor Decl. ¶¶ 4-5; *Anderson*, 2013 WL 3989562, at *4 ("[I]t is especially appropriate to require a defendant to provide evidence to justify assumptions [about pay] when the defendant is in the best position to produce evidence on the question.").

### 3. Vox Fails to Establish Its Meal and Rest Break Calculations by a Preponderance of Evidence.

Vox also estimates the meal and rest break premiums owed to the Class over four years. Vox makes unreasonable assumptions in coming to its estimate, including its assumptions that: (1) Content Contributors work similar numbers of hours per day, days per week, and weeks per year as Plaintiff; (2) Content Contributors were entitled to $10 per hour for all hours worked during the four-year Class period; and (3) Content Contributors suffered meal and rest break violations an average of once per week.

### a. Vox Speculates About the Number of Hours Content Contributors Work Per Week for Every Week of the Year.

Like Vox's minimum wage calculation, Vox asserts that all Class Members worked the same number of hours per week for every week of the year for its meal and rest break premium estimate,

without any evidence of the number of shifts that were long enough to qualify for meal or rest breaks to support its estimate. The frequency of meal and rest period violations will depend on the job responsibilities of various Content Contributors, the frequency of game days, and length of the season. It would be reasonable to assume, for example, that an individual Content Contributor worked more hours during while their team was in-season, so suffered more meal and rest break violations during that time compared to the off-season. Vox fails to adjust its calculation for any of these factors.

Unlike the defendant in *Tejero v. NRG Energy Services LLC*, No. 18-cv-04188-PJH, 2018 WL 6009705 (N.D. Cal. Nov. 16, 2018), Vox did not support its notice of removal with any facts regarding the number of days per week putative class members worked, nor facts regarding the number of hours worked per day. *See id.* at *2. Even with such allegations, this court found that NRG Energy Service's evidence were an insufficient basis to estimate meal and rest break violations. *Id.* ("But the fact that putative class members may have been <u>eligible</u> to receive rest and meal periods does not say anything about whether putative class members failed to receive those breaks or how often that failure occurred."). As discussed below, Vox also fails to provide any evidence supporting its estimate of the frequency of violations.

### b. <u>Vox Uses The Same Unreasonable Hourly Rate to Estimate Meal and Rest Break Premiums Over the Four-Year Period.</u>

As it did with Plaintiff's minimum wage claim, Vox again uses a simple $10 per hour hourly rate to estimate meal and rest break premiums. *See* Notice of Removal ¶ 38. Vox failed to use its pay history data to calculate the rate at which each Class Member was owed a minimum wage under California law for the four-year period. Vox instead picks a number close to the average minimum wage over the four-year period. This method is inaccurate reflection of the potential meal and rest period premiums, especially where Vox possesses the data to make a more accurate and reasonable estimate.

### c. <u>Vox Speculates That The Class Suffered a Once-Per-Week Violation Rate.</u>

Vox estimates that each Class Member suffered one meal period violation per week and one rest period violation per week. Vox does not support this assumption with any allegation in the Complaint or other evidence, but instead points to one court that accepted a 50% violation rate where

the plaintiff alleged a policy or practice of meal and rest break violations. Notice of Removal ¶ 36 (citing *Mackall v. Healthsource Glob. Staffing, Inc.*, No. 16-cv-03810-WHO, 2016 WL 4579099, at *5 (N.D. Cal. Sept. 2, 2016)). *Mackall* approves a violation rate of once- per-week, not a 50% violation rate, for a class of full-time employees.

Vox's violation rate is not supported by the allegations in the Complaint, nor the fact that members of the class are part-time employees with flexible work schedules. *See* Grimes Decl. Ex. 9 (stating that neither site manager nor site contributor positions are considered full-time). While a once-per-week violation rate may be reasonable for full-time employees who were alleged to suffer "consistent[]" violations of the Labor Code and were "often" forced to forego breaks, and where the defendant "willfully refused" to permit meal and rest breaks, *see Mackall*, 2016 WL 4579099 at *5, here, the Complaint, without more, does not support a once-per-week violation rate estimate. Plaintiff's Complaint alleges only that Content Contributors "regularly work more than three and a half hours per day," and that Vox does not permit Content Contributors to take ten-minute uninterrupted rest breaks. Compl. ¶ 26. Plaintiff also alleges that Content Contributors "frequently work over five hours per day," and that Vox does not provide a 30-minute off-duty meal period within the first five hours of work, nor a second meal break for those who work more than ten hours in a day. Compl. ¶ 27. These allegations do not support Vox's estimated violation rate. *See Basile v. Aaron Brothers, Inc.*, No. 3:17-cv-485-L(NLS), 2018 WL 655360, *2 (S.D. Cal. Feb. 1, 2018) (allegations that violations were "regular" do not speak to the frequency of the violations to sufficiently support a particular violation rate).

In cases involving part-time employees, defendants have had to provide evidence beyond broad allegations in the complaint detailing the number and length of shifts of over 3.5 and 5 hours to support their estimated violation rate for meal and rest breaks. *See, e.g.*, *Ford v. CEC Entm't, Inc.*, No. CV 14-01420 RS, 2014 WL 3377990, at *5 (N.D. Cal. July 10, 2014) (approving an 18% violation rate for meal breaks and 19% violation rate for rest breaks); *cf. Basile,* 2018 WL 655360, at *2 (a once-per-week violation rate was unreasonable where employees worked an average of 3.83 days per week). Without such evidence, a defendant's estimation of the violation rate is speculative. *See Smith*, 2016 WL 356020, at *3 (rejecting a once-per-week violation rate where it was unclear how many of the total

12

shifts in question were of sufficient length to require meal and rest periods); *Roth*, 799 F. Supp. 2d at 1120 n.58 (noting that defendants' calculation failed to account for the fact that many class members worked only part-time); *Blevins v. Republic Refrigeration, Inc.*, No. CV 15-04019-MMM(MRWx), 2015 WL 12516693, at *10 (C.D. Cal. Sept. 25, 2015) ("To do a credible job of estimating class damages, [the defendant] should, at a minimum, have disclosed what percentage of its employees worked full time rather than part-time during the class period."). Vox presents no evidence of the number of shifts that would trigger meal and rest period obligations.

Furthermore, Vox must also provide additional evidence about the frequency of violations in shifts that trigger meal and rest period obligations. *See Perez v. Saks & Co.*, No. C 14-2512-PJH, 2014 WL 4060306 (N.D. Cal. Aug. 14, 2014) (rejecting defendant's estimated meal and rest period violation rate of one violation every other week where neither complaint nor defendant's evidence supported the violation rate). In *Perez*, the defendant provided in its opposition to remand evidence of the number of workweeks in which an employee worked more than 30 hours, guaranteeing that the employee was at least eligible for rest periods. *Id.* at *2. But without any evidence of the frequency of missed meal or rest breaks, the court held that the defendant had still failed to provide a reliable estimate of the amount in controversy. *Id.* at *3; *see also Hughes v. McDonald's Corp.*, No. C 14-1700-PJH, 2014 WL 3797488, at *6 (N.D. Cal. July 31, 2014) (holding that defendants failed to meet their burden to show missed meal period damages where defendants "do not offer any evidence of frequency of late, missed, or uninterrupted meal periods"); *Sanders v. Old Dominion Freight Line, Inc.*, No. 16-CV-2837-CAB-NLS, 2017 WL 5973566, at *4 (S.D. Cal. Feb. 2, 2017) ("[W]ithout evidence to support this violation rate, the use of a 50% violation rate (or virtually any violation rate for that matter) is completely arbitrary and little more than speculation and conjecture.").

Given this lack of evidence, Vox's once-per-week violation rate is speculative and unsupported by the allegations in the Complaint. Vox has failed to meet its burden to show the amount in controversy on Plaintiff's meal and rest break claims by a preponderance of evidence.

**4.** **<u>Vox Fails to Establish Its Wage Statement Calculation by a Preponderance of</u>**

**Evidence.**

Vox relies on the Naylor Declaration to estimate the number of pay periods for which the Class is owed damages. Notice of Removal ¶¶ 42-43. As discussed above, the Naylor Declaration estimates the number of Class Members in the one-year period and provides no explanation for its estimate that Content Contributors were paid for a total of 38,315 days. Vox provides no basis for its assumption that Class Members worked and were owed wage statements for every pay period within that period. Given these unreasonable assumptions, Vox has failed to meet its burden to show the amount in controversy on Plaintiff's wage statement claim.

### 5. **Vox Relies on Speculation and Conjecture to Estimate Attorneys' Fees.**

Vox adds 25% of its estimate to the amount in controversy as an estimate of attorneys' fees. However, where a defendant makes unreasonable assumptions and speculations to support its estimate of the amount in controversy, the estimate of attorneys' fees is also unreasonable and speculative. *See Basile*, 2018 WL 655360, at *4; *Smith*, 2016 WL 356020, at *5; *Perez*, 2014 WL 4060306, at *3. The Court cannot rely on Vox's estimate of attorneys' fees because none of its calculations supporting its estimated amount in controversy are reliable and the attorneys' fees estimate should therefore be disregarded.

## IV. CONCLUSION

For the reasons above, Vox's estimate of the amount in controversy is not supported by the Complaint or its own evidence in support of removal. Therefore, Vox fails to meet its burden of establishing the threshold amount in controversy for federal jurisdiction, and the Court should remand this case to the Superior Court for Alameda County.

Dated: December 5, 2018

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

*/s/ Ginger L. Grimes*
Ginger L. Grimes

Attorneys for Plaintiff and the Putative Class